Bill GARDNER *v.* HKT REALTY CORPORATION
and Albert Holliday

CA 87-354                                                744 S.W.2d 735

Court of Appeals of Arkansas
Division II
Opinion delivered February 17, 1988

*Wilson & Associates, P.A.*, by: *Olan W. Reeves* and *William T. Finnegan*, for appellant.

*Daggett, Van Dover, Donovan & Cahoon*, by: *Albert Holliday* and *Jimason J. Daggett*, for appellees.

GEORGE K. CRACRAFT, Judge. Bill Gardner appeals from an order of the chancery court dismissing his complaint. The appellant brought this action against HKT Realty Corporation (HKT) and its president, Albert Holliday, seeking an order declaring that the term of a lease under which HKT claimed a right to possession of certain real property had terminated by its own terms and directing HKT to relinquish possession. The complaint alleged that the initial term of the lease had expired and HKT had failed to give the required notice of election to exercise its option to renew for an extended term. Appellees answered the allegations of the claim, asserting that if the notice was not given, the relief prayed for by the appellant would be "inequitable and contrary to the rules of equity and fair play."

The chancellor found that the appellant had failed to prove facts which would justify forfeiture of appellees' rights under the lease and dismissed the complaint. This appeal follows, with the appellant contending that the trial court erred in its ruling. We find no error and affirm.

The facts leading up to the expiration of the existing term of the lease are not in serious dispute. In 1966, appellee HKT entered into a lease agreement with Allen R. and Ernestine Owen under which the Owens leased to HKT a vacant square footage in an area then being developed as a shopping mall. The initial term of the lease was for twelve years at a rental of $150.00 per month, with the option of renewing for an additional eight years and two ten-year terms thereafter at increasing rentals. The lease also provided that, in the event any of the options for renewal were to be exercised, written notice should be given more than ninety days before the expiration of the term then running. By the terms of the agreement, HKT was to erect a building of specified dimensions and provide a hardtop parking area for the use of that building and the use of all other customers of the mall. It further provided that the lease would not be extended beyond forty years and that at the termination of the lease the premises would be vacated and all improvements erected on the property would become the property of the lessor. The agreement recited that it was the intention of the parties that HKT would utilize the area for a discount retail store, that the lessor would not lease any premises to a competing business, and provided for liquidated damages in the event he did so. It also provided that, at any time the lessor elected to sell the property, the lessee was granted the option of first refusal to purchase on the same terms and conditions as the offer received. The landlord was obligated to execute a mortgage on the leased property to secure the tenants' construction money loans and made provisions for division of the proceeds of insurance in case of loss by casualty and of any compensation awarded if portions of the leased property were taken by right of eminent domain.

Pursuant to the agreement, HKT erected a building and a parking lot on the leasehold at an expense in excess of $250,000.00. It subleased the building to a Gibson's Discount Store which remained on the premises until 1984. At the expiration of the initial term, HKT exercised its option to renew

for an additional term of eight years, which would expire on December 31, 1986. In December of 1984, in violation of the provisions of the lease, Owen sold his interest in the property to James L. Gardner without notifying HKT or extending to it the right of first refusal. HKT then brought an action against Owen and Gardner for specific performance of that agreement and filed a *lis pendens*. After the *lis pendens* was filed, in further violation of the lease, James L. Gardner sold the property to his brother, the appellant Bill Gardner, who was made a party to that action. In 1985, there was a further violation of the agreement in that the lessor leased a building in the mall to a discount store in violation of the non-competition agreement.

During most of 1986, negotiations were undertaken seeking settlements of the specific performance suit and the action brought on the breach of the non-competitive agreement. While these negotiations were still continuing, the deadline for giving notice of renewal for an additional ten-year term expired, and the appellant declared the lease terminated. It was HKT's position that the notice was not given because of the nature of the good-faith negotiations that were going on at the time and a belief that a renewal of the breached contract would prejudice its future rights. It contended that the acts of the appellant in terminating the lease under those circumstances were done in bad faith. The appellant denied that he had any part in any negotiations and insisted that the lease be terminated. The chancellor found that the circumstances under which the termination was declared amounted to a forfeiture, and that under the circumstances of the case it would be inequitable to enforce it. The complaint was dismissed and this appeal followed.

Appellant contends that the trial court erred in dismissing his complaint because the lease was not one for forty years but one providing for optional renewal periods, which options were not exercised. He argues that the issue is not whether a forfeiture was declared but whether a lapse had occurred because of failure to perform a condition precedent to renewal. *Uebe* v. *Bowman*, 243 Ark. 531, 420 S.W.2d 889 (1967). We agree that this is the general rule. Ordinarily the provisions for notice of intent to renew the term of a lease are not covenants to renew but establish conditions precedent to renewal and, where the notice is not given as provided in the instrument and there is no

evidence from which waiver might be found, the failure to give notice results in a lapse of the lease. *See id.*; *Synergy Gas Corp.* v. *H. M. Orsburn & Son*, 15 Ark. App. 128, 689 S.W.2d 594 (1985).

██ However, we agree with the chancellor that there are circumstances where equity may grant relief from a delay or failure to give notice of the option to renew a lease. It is a generally accepted rule that the failure of such notice may be excused or relieved against in equity if fraud, accident, surprise, or mistake are shown to have caused the delay or there are other special circumstances warranting the relief. Under this rule, relief is warranted where on the one hand it is shown that the lessor has not changed his position or otherwise been prejudiced by the delay, and on the other that the enforcement of the covenant will result in undue and inequitable hardship to the tenant. *See, e.g., Wharf Restaurant, Inc.* v. *Port of Seattle*, 24 Wash. App. 601, 605 P.2d 334 (1979); 1 A. Corbin, *Corbin on Contracts* § 35 (1963); 1 W. Jaeger, *Williston on Contracts* § 76 n. 4 (3d ed. 1957); Annot., 27 A.L.R.4th 266 (1984); 50 Am. Jur. 2d *Landlord and Tenant* § 1187 (1970). Many of the cases recognizing this discretionary power of equity are collected in an exhaustive annotation at 27 A.L.R.4th 266 (1984), which discusses those circumstances which will, either by themselves or in combination, invoke the aid of a court of equity. Among those factors are the cause and length of the delay, the length of the duration of the lease as contemplated by the parties, and the financial consequences of enforcement to both parties. The fact that the tenant was obligated under the lease to make valuable improvements which would become the property of the landlord at the termination of the lease was one of the factors given consideration in *Linn Corp.* v. *LaSalle National Bank*, 98 Ill. App. 3d 480, 424 N.E.2d 676 (1981); *Sosanie* v. *Pernetti Holding Corp.*, 115 N.J. Super. 409, 279 A.2d 904 (1971); *J.N.A. Realty Corp.* v. *Cross Bay Chelsea, Inc.*, 42 N.Y.2d 392, 366 N.E.2d 1313, 397 N.Y.S.2d 958 (1977); and *Wharf Restaurant, Inc.* v. *Port of Seattle, supra. See also* 50 Am. Jur. 2d *Landlord and Tenant* § 1188 (1970). In all of these cases, however, the determination of the court turns not on a single factor but on the balancing of the equities between the parties, i.e., the extent to which the lessor has changed his position or otherwise been damaged, and the extent to which enforcement of

the covenant would be an unconscionable hardship on the tenant.

Here, the witnesses for both sides agreed that leases requiring the tenant to erect costly improvements must of necessity be long-term ones because of the investment required and inability to obtain financing for construction on property leased for shorter terms. For over twenty years, HKT had faithfully performed all of the obligations of the agreement and paid in excess of $42,000.00 in rentals, $250,000.00 in initial construction costs, and $40,000.00 in additional repairs to the building. There was no evidence that the landlord had changed his position in any way because of the failure to give notice of renewal or that any harm would result to him if the lease was continued. There was evidence that the appellees had never intended for the lease to lapse, and had in fact expended large sums in obtaining architectural plans for costly improvements to the property which would make it more profitable during the latter years of the extended terms of the lease. These plans had been discussed with appellant's agent, and, according to appellee Holliday, they had entered into the negotiations for settlement of the specific enforcement action. There was undisputed evidence that the appellant and his predecessors had breached the covenants of this lease in three material respects, forcing HKT to seek redress in the courts. There was no evidence that HKT was grossly negligent in failing to give the notice but rather that it had withheld notice in the good-faith belief that, while it was negotiating settlement of the lawsuits with the appellant, a renewal of the lease upon the same terms and conditions would renew it subject to those breaches and otherwise prejudice its rights in the future. There was also evidence of less than good faith on the part of appellant.

We conclude that a chancery court does have power in the exercise of its equitable discretion to relieve a tenant from the consequences of failure to give notice, where a failure to grant such relief would result in an unconscionable hardship to a tenant with no corresponding harm to the landlord. The chancellor found that it would be inequitable to enforce the provision under the peculiar and special circumstances of this case. From our review of the record, we cannot conclude that that finding is clearly erroneous.

We do not mean to imply and do not hold that any single

154

factor or combination of factors is controlling in bringing this equitable relief into action. We hold only that under the particular facts and circumstances of this case, when viewed as a whole, the chancellor's determination to excuse strict compliance with the notice requirement was not clearly erroneous or an abuse of his discretion.

Affirmed.

CORBIN, C.J., MAYFIELD, J., agree.